We'll hear argument first this morning in Case 23-1239, Barnes v. Felix. Mr. Zielinski? Mr. Chief Justice, and may it please the Court, We are here today because Ashton Barnes was shot and killed on the side of a Texas highway after being pulled over for unpaid tolls. The question before this Court is how to determine whether Ashton's Fourth Amendment rights were violated. The Fourth Amendment prohibits unreasonable seizures. Justice Scalia was no fan of a totality-of-the-circumstances test. But in Scott, Justice Scalia made clear that courts must slosh through the fact-bound morass of reasonableness. In this case, the District Court and the Fifth Circuit didn't do that. Instead, they applied the moment-of-the-threat doctrine. According to the Fifth Circuit decision below, Until now, respondents had embraced the moment-of-the-threat doctrine. But before this Court, respondents have abruptly shifted positions. They now argue that courts should look to what occurs before the moment-of-the-threat and apply the law of self-defense and superseding cause. Absolutely none of this appears in the decision below. All of it confirms why the moment-of-the-threat doctrine is so wrong. Finally, as Judge Higginbotham underscored in his concurrence, the facts show that Officer Felix acted unreasonably. But this is a court of review, not of first view. The Court should rule for petitioner on the sole question presented and remand for the lower courts to apply the correct constitutional standard. I welcome this Court's questions. Under your approach, what would that correct standard look like and how would it be applied here? Justice Thomas, we think the standard is the totality-of-the-circumstances standard that this Court articulated in Graham, Garner, Scott, and Plumhoff. In this particular case, it would require looking at more than just the two seconds in which Officer Felix was on the moving vehicle. It would require asking, was there a reason for Officer Felix? How much more than the last two seconds? Justice Thomas, if you include an extra three seconds, then you would look at the seizure in its totality. I think that this Court shouldn't be drawing bright-line rules on exactly how much of the seizure should or shouldn't come in. That's what Justice Scalia underscored in Scott. There are no rigid rules. And courts can apply ordinary principles of relevancy and proximate cause to determine the reasonableness of a seizure. Was it reasonable for the officer to jump on the side of the car? So, Justice Kavanaugh, we don't think it was in this particular case, but that's precisely the issue that the lower courts couldn't evaluate because they applied this legal amnesia and only look at the fact that the officer was on the moving vehicle. Judge Higginbotham, in his concurrence, looked at the totality-of-the-circumstances and said, I think it was unreasonable in this case. We want the opportunity for a court to be able to look at that and for us to be able to litigate that court claim. What's an officer supposed to do when at a traffic stop and someone pulls away, just let them go? No, Justice Kavanaugh, I think there are a number of other options that were available to Officer Felix that day. Let me give you four. First, the highway was a camera-controlled highway, so you can monitor all the cars by camera. That's, in fact, how Ashton Barnes was pulled over in the first place. The cameras automatically identified his car as one with unpaid tolls. Second, he could have radioed to somebody else on the road to follow Ashton Barnes. Third, he could have gotten back into his squad car and followed him. And fourth, they also had the car's license plate. So we're not suggesting that somebody should just get away scot-free, but it is unreasonable to use deadly force because what happened was Officer Felix put himself in a position where he had no alternative but to shoot the driver, and that's unreasonable, and you have to look at the whole picture, not just the two seconds in which he's on the car. Did the officer violate the Fourth Amendment at any point prior to the time when he used deadly force? If he had not used deadly force but he had jumped on the side of the car and done everything else he did prior to that moment, would there be a violation of the Fourth Amendment? So, Justice Alito, we had brought a predicate came below about the drawing of the firearm. My friends on the other side have suggested we should have brought a predicate claim based on the jumping onto the car. But at the end of the day, I don't think that it matters whether there is a predicate claim because, let me give you an analogy, in the search context, you have an obligation to knock before you search. There is no freestanding requirement under the Fourth Amendment if you're an officer standing outside a door to knock. But if you are going to engage in a search, we evaluate the reasonableness of that search by looking, a couple seconds before, did you knock? Well, the reason for the question is to probe whether you are using the term unreasonable in a sense that's different from the sense in which the Fourth Amendment prohibits unreasonable searches and seizures. So unreasonable has a particular meaning when the court has to decide whether there was a Fourth Amendment violation. But in lay speech, unreasonable could go to whether the action was prudent, whether it was a violation of best police practices or the practices of a particular police department. Those are not necessarily the same thing. In fact, it seems that they're probably different. So you are eliding these two different meanings of reasonable. Now, maybe that's sound, maybe that's unsound. Justice Alito, what we're asking for is the standard that this Court has applied in Garner, Graham, and Scott and Plumhoff, which is you have to look at the balance here. There's, on the one side, the state interest in seizing someone in a particular manner. On the other side, there's the harm to the suspect. Here, the ultimate harm, the loss of his life. The problem in this case is that the Fifth Circuit couldn't engage in that core balancing because it couldn't ask, was there a really pressing reason for an officer to jump onto a car and give himself no other opportunity but to shoot the driver? Would you be satisfied with a narrow holding that it is wrong for a court to look just at the moment of the threat, that the court has to judge the reasonableness of the alleged unreasonable seizure based on taking into account, to whatever extent they are relevant, the events that occurred before that? Would you be satisfied if we just did that? I think we would. Not get into these other more difficult questions. 100%. I think it would be helpful if the court makes clear that that means that you can look at the jump in addition to the shoot, right? That's the core issue that we want to be able to litigate. But yes, Justice Alito, we'd be happy with a very narrow holding. I don't want to limit it just to that, though. I mean, I thought that the totality of the circumstances as we just described it has at least three factors. The nature of the crime for which the stop occurred, the circumstances, et cetera. The three minutes, are you starting that from the moment that the stop occurred and the reason for it? Or do you want to do it just from when he jumped on the car? So we don't want to look at it just from when he jumps on the car. I do think you have to consider things like what he stopped for. My friends on the other side, by the way, agree on that because they say all of that comes in because it's part of... I know. We'll get to that with them. They want to make it a totality of the circumstance case, but that's not what the Fifth Circuit said. I can ask them that question. Having said that, there is a split of eight to four on this question, whether the court needs to look at the totality or just the moment of threat, correct? That's correct, Justice Sotomayor. So if we do what Justice Alito has defined as a narrow approach, that's not really narrow, that's deciding a circuit split, correct? Yes. Can I add a but to clarify my answer to Justice Alito? I think you could resolve this case by saying the moment of the threat doctrine is wrong, it was too narrow, it didn't apply to the totality of the circumstances, and we, this court, are not going to try and delineate every meat and bound in every case. You've given up in your reply brief, I understood, that you're not asking us to address the question of what an officer-created danger rule is like. We're not asking for an officer-created danger test at all. And that wasn't even addressed below, correct? That's correct. But you're happy with the narrow, I'm going to call it narrow, in the sense that if we said moment of the threat is wrong and we don't articulate a precise standard, other than saying our regular totality of the circumstances test applies, as Justice Sotomayor said, that's really what you're asking for. I think in this case, we're trying to be able to litigate the fact that he jumped onto a car, and we have sharply different views. My friend and I have sharply different views about whether it was reasonable to jump onto that car. That's the issue we were not able to litigate. I think this court doesn't need to go and say, in every case, here are the meats and bounds. I do think, Justice Barrett, if you want to put a little bit of flesh on the bones of that test, you could look to your decision in Beigert for the Seventh Circuit, where you said an officer might act unreasonably where they're primarily responsible for the danger. And you would be happy with that language? We would be happy with that language. And you don't have a position on whether a prior Fourth Amendment, and it kind of goes to Justice Alito's point, whether kind of a predicate Fourth Amendment violation that's unrelated to the excessive force necessarily means that if the officer violated constitutional rights, let's imagine it's not a car stop, let's imagine it's a home entry or something like that, you know, then it's off the table. After that, even if things devolve, the officer put himself in the situation. In fact, well, I have two answers to that. The first is, in Mendez, this court already held that where the damages are the foreseeable consequences of that predicate violation, then they are on the table. I think that goes a long way toward disproving the parade of horribles on the other side, because you are, in those cases, going to look at preceding conduct. But the second answer to your question is that we, of course, agree things like superseding cause. Again, your decision in Beigert for the Seventh Circuit is a great example of that. Superseding cause comes into play. The Fifth Circuit couldn't apply those kinds of tests because all it looks at is the fact that Officer Felix is standing on that vehicle, and that's why it's so concerning. It prevents you from engaging in that core Fourth Amendment balancing. What was the nature of the government interest on the one hand? What was the harm to the individual on the other? Do you agree with the language in the Seventh Circuit opinion that said it applies when the officer created a situation where deadly force became essentially inevitable? I think that that is our view of this case, Justice Kavanaugh. And are you asking then... I realize you're going to say this is for the Fifth Circuit. I'm not going to ask it on remand, but I'm going to ask it anyway. Are officers always prohibited at traffic stops when the car pulls away from jumping on the car? Absolutely not. Okay, when can they and when can't they? Let me give you an example when they can. Let's say they see an abducted child in the back seat, and they know if they don't jump onto the car then, something terrible might happen to that abducted child. That's a type of totality of the circumstances inquiry that looks at what's the nature of the government interest at play. What's the harm to the individual? In this particular case, we're talking about unpaid tolls. So we want to be able to argue with the Fifth Circuit. True, but obviously traffic stops sometimes identify people who are doing things that are much worse. Oftentimes, major criminals are apprehended for things like that. I can give you some historical examples that are obvious. So I don't know that an officer can assume that's the only thing going on. If someone's pulling away, they could be a danger to others on the road. Who knows what's going on, right? So Justice Kavanaugh, that's precisely, and maybe this was prefaced in your opening colloquy, but that's precisely what the Fifth Circuit couldn't engage in in this case. So I agree that there may be some sort of... When an officer jumps on the car, the deadly force can be avoided by the driver too. Well, in this particular case, Officer Felix's own expert testifies that Officer Felix shot so quickly, Ashton Barnes didn't have time to stop. And if I could, let me sketch out, Justice Kavanaugh, why it's so dangerous for you to shoot a driver. In fact, I'm not aware of any police department that recommends that its officers shoot drivers. The high likelihood, in this particular case, Ashton Barnes didn't immediately die. He was able to break the car and put it into park. If he had been immediately killed, that car could have careened and crashed into the highway. Officer Felix put other people on that highway in grave, very serious danger that particular day. So I don't think it's just he's jumping on to stop Ashton from getting away. He's also jumping on in a manner that is going to put a lot of other people at risk. Justice Olinsky, can I take you back to the question presented, which is whether or not it was correct for the Fifth Circuit to apply the moment of threat doctrine? What is your understanding of that doctrine? I guess I was surprised that Respondent, in this case, at this time, sort of has created now a conception of it that did not seem to align with what the Fifth Circuit said. So what is your view of the moment of the threat doctrine? So Justice Jackson, Judge Higginbotham was very clear in his decision below. You cannot look at any of the officer's actions prior to the moment of the threat. He's joined in that decision by Judge Elrod and Judge Smith. Respondents themselves agreed below that you can't look at anything prior to the moment. Do you perceive them now to be saying that you can look at some things? Yes. So that's a different concept. A hundred percent. And Justice Jackson, they've gone so far as to say if an officer jumps in front of a moving car and shoots the driver, that's unreasonable. Well, that's our view of this case. And part of the problem is we weren't able to have a lower court look at the totality of the circumstances and decide, was this like a case in which you jump in front of a car and immediately shoot the driver? Do you agree with the language in the Solicitor General's brief that says the circumstances at the moment that force is used will generally have primary significance in the analysis? So I think that there's very little daylight between us and the Solicitor General. I think that language, Justice Kavanaugh, is descriptive. So it's describing in the vast majority of these cases. Do you agree with it? I do. And do you agree with when the Solicitor General says the type of situation that was described in Begert will be rare? I think that there are a series of reoccurring fact patterns. I think there are two of them. I think that the jumping in front of or onto a car does occur with some frequency. So we cited in our reply brief a study of 400 stops that found that there is a routine problem of officers jumping in front of cars. In the article, it's described in a Hollywood style and then shooting the driver. The other reoccurring fact pattern is a pattern where officers fail to identify themselves. And the suspect, exercising his or her own Second Amendment rights to self-defense, pulls out a firearm. The Fifth Circuit alone has two cases in which they apply the moment of the threat doctrine. The cases are Cass and Royal. And they say, we can't look at the fact that the officer failed to identify himself. We can only look at the fact that the officer faced a loaded gun. And that, by the way, is just sharply inconsistent with how the common law approached the exact same circumstance. And that's a very strong indication... The jumping in front of the car, I think you said this earlier, but sometimes it'll be reasonable and sometimes not. So yeah, let me give you an example maybe where it might be reasonable, just to help flesh it out. Take the tragic terrorist attack in New Orleans. In that particular case, someone used a car as a weapon of terror. If an officer had jumped in front of the car and shot the driver, that officer would be a hero. And it's because the state interest in that case, in seizing that terrorist, is incredibly high. Again, that's the type of balancing that the Fifth Circuit just couldn't engage in in this case. Well, here, the stop is for failure to pay tolls. But we could ratchet up very gradually the severity of the reason for the stop. And at what point would the offense become sufficiently serious? At what point, if any, would the offense become sufficiently serious in your judgment to make it reasonable for the officer to get on the sill of the car? So, Justice Alito, it's a very difficult question to answer because, as this Court has said, it is a fact-specific question that's going to depend on each given case. And there are no magic rules. There's no on-off switch. And that's Justice Scalia and Scott. You can't just start drawing the lines precisely because these cases are so numerous and there are so many different permutations. And so I think it would be very dangerous to start drawing those lines. Thank you, Counsel. Justice Thomas, anything further? What do you do with the cases cited by the other side where the Fifth Circuit does appear not to apply the moment-of-threat doctrine and does take into account more of the totality of circumstances? So, Justice Sotomayor, let me give you three responses. First, there's never a Fifth Circuit case where they actually look at the officer's prior conduct and say that's part of the calculus and it goes against the officer. So it's always, whenever they might do it, it's only in the officer's benefit. The second, the best case... Some of my colleagues might agree with that. Why should we not? Because you have to look reasonableness. The framers gave us a test of reasonableness and that is a two-way street, not a one-way ratchet. And it requires... The common law, you gave the prime example in the common law, which is if a plainclothes officer doesn't denounce he's an officer and pulls out a gun... Yes. ...under that circumstance, the common law would say someone can defend themselves and pull out a gun. Yes. All right. Yes. So, okay, go ahead, Peter. And then the other response to your question, and I have two more answers. The first is that there's just a wealth of Fifth Circuit cases that come out in the other direction and are just crystal clear. So I would just direct the Court to the Harris v. Serpis case, and that's quoted by Judge Higginbotham in his decision below. In Harris, the Fifth Circuit goes out of its way to say this Court has narrowed that test, and that test is referring to the Graham test. So they are self-consciously clear that they are narrowing this Court's precedent, and the Court then goes on to say any of the officers' actions leading up to the shooting are not relevant for the purposes of an excessive force inquiry in this circuit. So that's a categorical bar. And then the third point is that, in this case, you don't just have Judge Higginbotham who's describing the split or the moment of the threat doctrine. You also have Judge Elrod and Judge Smith, who sign on to that panel decision, and all of them agree this is how the doctrine operates in the Fifth Circuit. Thank you. Justice Jackson. Thank you, Counsel. Mr. Koehling. Mr. Chief Justice, and may it please the Court, the Fifth Circuit analyzed this case by examining only the so-called moment of the threat and categorically ignoring all prior events. None of the parties defends that approach. That is because reasonableness is assessed under the totality of the circumstances, and pre-force events can be critical to that assessment. Prior events often show that the force was reasonable. For example, police may have issued warnings or attempted de-escalation, all of which a split-second moment of the threat doctrine misses. Of course, when officers face a moment of danger, that is by far the most important factor under Graham. But in rare cases, a moment of danger doesn't tell the whole story. If the danger was manufactured entirely by police conduct outside the bounds of reasonable behavior and not by the suspect's intervening apparent misconduct, it is unreasonable to use force in the moment. The panel's approach fails to provide a constitutional backstop in those cases and it disregards context that may show that force was reasonable in others. I welcome the Court's questions. Would that also include, those circumstances also include, the conduct of the victim that preceded the shooting? Absolutely, and as we explained in our brief, the officer's conduct and the suspect's conduct are often intertwined. It's how the suspect reacted to what the officer did, and that can be very important in the reasonableness assessment. And the other way, how the officer reacted to the victim? Exactly. It's truly a totality of the circumstances approach, and the Fifth Circuit's narrow, cramped reasoning didn't allow for any of that to be considered. I just want to know, is there any area where you disagree with the petitioner? No, I think that what petitioner has just articulated aligns well with our view, and I'm glad to hear that he endorses some of the statements in our brief. We agree this Court doesn't need to go further than just saying that the Fifth Circuit's approach here was wrong, because it focused only on a narrow two-second snippet of the encounter rather than looking at the entirety. And the Court probably doesn't need to go further and delineate the precise bounds of when force will be sort of reasonable or not. And so I think we don't have a lot of daylight. To be honest, I don't think we have a lot of daylight between us and respondents either. This respondent also seems to agree now that pre-force circumstances matter, and I think the respondent also agrees that a moment of danger doesn't tell the whole story, because at page 33 and 34 of his brief, he agrees there are circumstances where there can be an imminent danger to the officer, and the use of force can still be reasonable. What do you tell an officer who pulls someone over for a traffic violation, but as often, or not often, but sometimes happens, that person has done or is planning to do something more serious, and driving away is one potential indicator of that? An officer does not get the time we've spent here today to make the decision, do I let it go, knowing that this person could do serious harm or has done and will never catch the person, or do I jump on the car? They have to make that decision, and what do you tell them? Justice Kavanaugh, we completely agree that the grand inquiry has to be very sensitive and deferential to the officer's need for split-second decision-making. I think the training, the guidance we would have officers be given, is one that officers are already trained under, as the petitioner points out at page 41 of her brief. Basically, you may use force to respond to a danger to yourself or the public, but don't manufacture a situation where the use of force becomes essentially inevitable. And I think that kind of guidance would be helpful to officers. When they are in a split-second moment in a traffic stop, as you were discussing, it may often be reasonable to use force to stop the vehicle. A vehicle can be a dangerous weapon, as this Court has recognized. But that's not true in every single case, and the grand inquiry has to be case-sensitive. I think the officers are going to want to know, do I let him go or do I not let him go, as a general proposition when someone pulls away from a traffic stop, or do I try to jump on the car, jump in front of the car? And I don't know that you're – and I realize we're not going to flesh all this out in this case, but officers are presumably paying attention to this, and they have to make those decisions all the time. I'm curious, let him go or not. Of course. I think it's going to depend on what you've pulled them over for, if you know or suspect them to be armed, how they're behaving in your interaction with them, if you're getting the sense that as they pull away, they're going to pose right away a big danger to people on the road. And Respondent says that that was the case here, and it may well have been, and it may well have been reasonable to use force to stop the officer or to jump on the car to stop Barnes from getting away. But the Fifth Circuit just didn't consider any of that, and that's what we think is wrong. Is it an objective or subjective inquiry in terms of what type of conduct is going to create the danger? I mean, it's like, what about the equivalent of an eggshell plaintiff? I mean, is the officer subject to varieties in terms of reaction from people that he pulls over? Mr. Chief Justice, the Fourth Amendment test is always an objective reasonableness test. We're not looking into the subjective state of mind of the officer to see if he was acting in good faith or being particularly sensitive or something like that. It's whether he acted objectively reasonably. I'm thinking more of the perpetrator in the officer's mind. I mean, maybe somebody really views something as a serious danger, and the officer doesn't know that. Is that at all pertinent? I think the officer should take into account sort of the imminence of the threat he perceives, and he may perceive that the suspect has a bad motivation, is about to do something dangerous, and that does matter, but the ultimate inquiry is the reasonableness of the officer's perception that there was an imminent threat and it was reasonable to use force. I do want to just briefly address on the subject of objective versus subjective standards. I think Texas argues in its amicus brief, and we haven't had a chance to respond, that we are sort of improperly inserting a subjective element into the qualified immunity inquiry because we say that reasonableness is assessed based on the actual fact that the officer knew. That's not correct. Our test is an objective reasonableness one, and this court has actually rejected that precise argument that Texas makes in Anderson versus Creighton, which is a case that Texas cites in its brief. If I could quote from page 641 of the U.S. reports there, the court says that the qualified immunity inquiry, quote, will often require examination of the information possessed by the searching officials, but contrary to the Creighton's assertion, this does not reintroduce into qualified immunity analysis the inquiry into official subjective intent that Harlow sought to minimize. So this really is an objective test. Of course, the officer will be making perceptions about whether the subject that he's engaging with is acting in bad faith or about to do something dangerous, but the ultimate inquiry is objective. I assume, tell me if I'm wrong, but I assume that you would want us to write an opinion that doesn't say anything about the weight to be given to the officer himself creating the danger. But I'm trying to think of, given the facts of this case, how an opinion that you would want us to write avoids that question entirely. I think the narrowest opinion this court could write would just be to say, prior circumstances matter, they're part of the totality of the circumstances, the Fifth Circuit didn't recognize that. If the court wants to put more meat on the bones, I think it could say, as we've said in our brief, the circumstances at the moment of the threat are going to have prime importance and it's going to be a rare case in which an officer is experiencing a moment of danger and it's nevertheless unreasonable to use force. And it's going to be the types of cases where we're talking about and of the sort that Justice Barrett recognized in her Begert opinion where the officer has done something outside the bounds of reasonable behavior that essentially makes the use of force almost inevitable. There's really no intervening misconduct by the suspect. Why would we do that? Why would we put a thumb on the scale that way and say that it's almost impossible to make out a Fourth Amendment claim in those circumstances given the very nature of encounters between police officers and citizens across the country, the standard we've always said, reasonableness is a totality of the circumstances, and a common law, these are all questions for the jury. And you also have layered on top of the Fourth Amendment qualified immunity to protect the officers in these cases. Why would we start creating a new jurisprudence of exceptional circumstances? I don't think it would be a new jurisprudence or a thumb on the scale so much as a reflection that when balancing the Fourth Amendment interest of the individual and the government, the government has a very strong interest when there is an imminent danger to himself or to the public. But you're right, of course, it is a totality of the circumstances inquiry and we wouldn't be asking for a departure of that. I think the reason the court might want to go further and say it's going to be rare when there truly is a moment of danger is because you want to avoid a situation where courts are taking this as license to do some kind of officer-created danger rule where merely getting into a bad circumstance, making a bad stop, means that the later use of force is automatically unreasonable. I think that would be what we're trying to guard against, Justice Gorsuch. That's nice, but this is not the issue before this court, correct? Correct. This court does not need to go any further than to say that in this case... And Justice Scalia was very clear in his Scott writings that we shouldn't be trying to do black-line rules here. Certainly. We're not asking for black-line rules. I think just if the court wanted to give more color, it could say, as Justice Barrett said, in the bigger opinion, we think when there's a moment of danger, that's very often going to be dispositive, but not always. Let me just say it's important. Everything is important, but it's important. You're putting a scale on it, by the words you use. You're putting a thumb on it. This court certainly doesn't need to say anything further than the narrow opinion that Justice Alito sketched out with my friend, but I do think, given that the question is the reasonableness of the use of force in the moment, the circumstances in the moment, and the presence of a danger in the moment, will have to be quite important. Thank you, counsel. Justice Alito? Well, it's fine to tell someone, a court or anybody else, take into account the totality of the circumstances, but that's fairly meaningless unless you also tell that person what you are examining, the totality of the circumstances, to determine. And that's really the difficult question here. Are you examining the totality of the circumstances to determine whether the act that forms the gravamen of the Fourth Amendment claim, let's say it is the allegedly unreasonable use of deadly force, is unreasonable? Or are you asking the court or the jury to determine whether the whole course of conduct in which the officer is engaged was unreasonable, in part in the sense that it wasn't prudent, it was in violation of perhaps departmental policies or the best practices that have been established for police departments, that some people think should be followed by police departments around the country? That's really the difficult question. And what would you say to that? I would say, Justice Alito, the former. The question is, was the use of force, the seizure, reasonable in the moment? That's what we're trying to get at when we look at the totality of circumstances. We're not doing some sort of freewheeling inquiry into whether the officer overall, over the course of five minutes, acted reasonably. So that is why we think the circumstances in the moment do have prime importance. But that does not mean that courts have a license to ignore everything before that moment, as the Fifth Circuit did here. Would a court hearing this case be obligated to admit expert testimony by various individuals who have a view about what are good police practices and what are not good police practices? Would that be what the jury's determination would boil down to? So the ultimate determination here about whether the officer acted reasonably is, according to Scott, a pure question of law. The jury's not deciding that. The jury could be making factual determinations about what actually happened, when the officer jumped and all the rest. As the court is examining whether that initial thing that the officer did here, jumping on the car, was outside the bounds of reasonable behavior, I do think it's appropriate to look at training manuals and the like. That can't resolve the question, but that could provide helpful guidance. There are some federal law enforcement officers who make vehicle stops. So what is the teaching? What are they taught about placing themselves in front of the car or in a position where they could be killed or injured if the driver decides to try to drive away? I don't know across the board a rule for stepping in front of cars. I know that federal officers are trained to use force to respond to danger, but not to enter into situations where the use of force becomes sort of inevitable. That's like the DHS manual that my friend points to at page 41 of her brief. I think, again, we don't really train officers to go right up to the constitutional line. We often will train officers to not enter in these situations to begin with, even if they ultimately do so, it could end up being not a force of violation. So I suspect we would train officers to frequently avoid using force on roads and whatnot, even if it would be permissible under the circumstances to do so, because we just want to train them more cautiously, I suspect. Thank you. Justice Sotomayor? No, thank you. Justice King? Justice Gorsuch? Justice Kavanaugh? I just am curious, after this case gets resolved on remand, and if it goes back on remand, what the rule will be for officers and what those training manuals will say, put aside the abducted child example. If someone's pulling away, it might be they just don't feel like they want to be hassled for a traffic violation, but they could be about to drive down the street in New Orleans, you don't know, or they might be on drugs and about to kill someone else who's on a bike on the side of the road. And I don't know what we want officers to do, and I don't know how that's going to get fleshed out, but officers, if they're held liable for jumping on cars for anything that happens thereafter, are just going to let cars go. And maybe that's the rule that the United States thinks is appropriate. I don't know. That's not the rule the United States thinks is appropriate. I do think that it is sometimes appropriate to use force to stop a car from pulling away from a stop. I think Briseau is good guidance on that. But Briseau also says that the use of force to stop a vehicular flight is necessarily a context-specific thing. I think it says at Briseau that that is an area that depends very much on the facts of each case. So I recognize I could be unsatisfying in giving guidance to officers. Police departments may well say, you know, don't jump on the car no matter what, unless you see a weapon or something like that. But, again, they may train them not to go all the way up to the Fourth Amendment line. But we don't think that there is a reason they can't. An individual officer would be who is risk-averse on being held liable for something like this. Just not going to do it. But, anyway, I'll stop there. Thank you. Justice Barrett? Mr. Kubik, to this point, there is a split on this. So what about in the circuits that don't take the moment of threat approach? These questions that Justice Kavanaugh is asking about guidance for police officers, I'm just wondering what your view is of how courts are handling these kinds of cases in that circuit in ways that might affect police behavior. So I do think, actually, this split is maybe not so much a two-sided split as a three-sided. I do think there have been some courts that veer a little bit towards an officer-created danger rule where they seem to say that almost suggests that the use of force is automatically unreasonable if earlier in the sequence the officer did anything unreasonable. And we don't think that's correct, and we do think that would be bad guidance for officers and would lead them to police less aggressively than they need to be able to. But I think in a court that appropriately takes into account the totality of the circumstances, officers will have good guidance to use force when necessary, when there's a danger and they need to protect themselves or the public, but to avoid situations, as I said, to avoid manufacturing a situation where the use of force effectively becomes inevitable. That's jumping in front of the car, that type of thing. Again, obviously respond to disputes. That's what he's done here. The petitioner thinks it is. That's what they'll sort of hash out below. But I think guidance that says you can use force to respond to danger. Don't manufacture a dangerous situation would go a long way. So you said it's a three-sided split, and you're kind of saying the circuit on one side and then these officer-fabricated or officer-caused dangers on the other side. What about those circuits in the middle and this concern that Justice Kavanaugh is correctly expressing about what cops do in the moment in those circuits that take the more middle approach? I take it that's what the United States is supporting.  And this isn't a problem in those circuits? I don't think so. I mean, we have amicus briefs on the other side from, for example, law enforcement officers from Wisconsin, which is in the Seventh Circuit, which does take this kind of more middle-of-the-road approach. And I don't see in their briefs something saying that they have a uniquely difficult time policing. I think they are, of course, going to have to make split-second decisions. And very often in the cases where a court sort of ultimately decides that the decision they made was on the wrong side of the line, they'll still be protected by qualified immunity. So, of course, we are definitely very concerned as the United States about officers not being able to engage in aggressive enough policing. They need to be able to, but we don't think that a totality-of-the-circumstances approach, which is what Graham cautions, what Scott cautions, what this court has endorsed over and over again, would lead down that path. And last question, what's the deal, you know, in Respondent's Brief at footnote 3, it says the United States questions whether Sergeant Felix jumped onto the door sill shortly before, shortly after, but the parties agree it was after. What's the deal with that factual dispute? I think it's a dispute about the way the district court phrased its opinion. I mean, it seems to suggest a distinction between the moment that the car started moving forward and a moment of acceleration. So it seems now everyone agrees that the officer stepped on the car after it started moving forward. There is that passage that we quoted from the district court opinion that says it's not clear if it's before or after the acceleration. I think that may be where the confusion comes from. The fact that there is some confusion about this matter of timing, which could go to the question whether the decision to jump on the sill was reasonable or not, to me seems like further reason to vacate and remand and send it back to the Fifth Circuit. Justice Jackson? Just to follow up on Justice Barrett's questions, it's the majority of circuits that use a totality test. Is that correct? Yes, I think that's correct. And is there any indication in those circuits that there is confusion or concern about the application of that test either on the part of the courts or on the part of the officers who do their jobs in that context? Not to my knowledge. I do think that, again, a feature of the sort of totality of the circumstances approach that applies to the Fourth Amendment across the board is that it doesn't always provide perfect guidance to officers. That's why we do have the backstop of the clearly established prong of the qualified immunity analysis to make sure that officers are not held liable for things that they sort of weren't on notice, were on the wrong side of the line. But I'm not aware of a problem in the circuits that are correctly applying a totality of the test. And is it the case that in those circuits that are correctly applying the test, that officers are regularly found to have engaged in using reasonable force? We're not talking about the application of a test that necessarily results in officer liability, right? Absolutely. Obviously, the United States would not endorse such a test, of course. And can I just clarify that the United States is not taking a position on the facts of this case and whether or not Officer Felix used reasonable force, and, in fact, you would be satisfied with just a clarification that moment of threat doctrine is not what courts should be using and then sending it back to the Fifth Circuit for the Fourth Amendment analysis in this situation? That's absolutely correct. Our interest in this dispute is a narrow one. We're really just interested in correcting the Fifth Circuit's legal error, and we have no position on the facts of this case. Thank you. Thank you, Counsel. Mr. McCloud. Thank you, Mr. Chief Justice, and may it please the Court. When an officer doing his duty confronts a threat to his safety or the safety of others, it is reasonable for that officer to use force to end that threat. That's the conclusion this Court has consistently reached, and that's what the Fifth Circuit correctly held below. At the moment Sergeant Felix used force, he was clinging to the side of a fleeing suspect's car, and Felix reasonably believed that his life was in imminent danger. That conclusion should end this case. Petitioner's contrary argument attacks Strawman. Let me be very clear. We are defending the decision below and the moment of threat doctrine as it actually exists. The core premise of that doctrine is that an officer doesn't lose his right to defend himself just because he made a mistake at an earlier point in time. But applying that rule does not require courts to ignore everything that occurred prior to the use of force. Like other circuits, the Fifth Circuit has repeatedly held that preceding events are relevant to the extent they inform the officer's perception of the danger that he faced. The panel decision below repeatedly cited to and quoted from those very precedents. The panel did not and could not overrule them sub salientio. Petitioner asked the Court to create a new breed of constitutional tort under which an officer facing the barrel of a gun loses his right to defend himself if he previously used bad tactics or poor planning. That's contrary to precedent and common sense. Graham asks only whether an officer's use of force was reasonable in the particular circumstances he faced. It requires courts to put themselves in the shoes of the officer who used force, not to second guess every decision the officer made in some of the most stressful circumstances imaginable. And Plumhoff and Mendez rejected similar officer-created danger theories as illogical, unwarranted and inconsistent with precedent. The Court should reject the theory again in this case and affirm the judgment of the Court of Appeals. I welcome the Court's questions. How would you assess the difference between the Fifth Circuit's approach as you see it and the totality of the circumstances approach as we heard it this morning? So I don't think that there is any difference between what the Fifth Circuit does and what Graham directs. No, I mean what the Solicitor General and Petitioners as they see the totality of the circumstances, not so much Graham. So the difference, I think, between our position and somewhat the government's position is they want to include within the totality of the circumstances arguments that the officer escalated the danger or created the danger. And we think that is now a relevant consideration under Graham and under the Fourth Amendment. In those cases, the question is, was there a legitimate threat? Were they arguing that this morning? That was exactly the argument that I heard this morning. He said that, Mr. Zolensky said that Sergeant Felix created a dangerous situation by jumping onto the car. But I thought he said he wants to argue that later when it goes back. Well, that was the argument that they tried to advance in the Fifth Circuit. And this is, I think, the one thing I agree with in Judge Higginbotham's solo concurrence at 15A of the petition appendix. He says that argument is foreclosed under Fifth Circuit law. And that is the actual issue that divides the circuits. There is no split on the question of whether you can consider preceding events. Every court in the country considers preceding events. The question is whether you can use those preceding events as a basis for making an argument that the officer made a mistake or used poor planning. But, Mr. McLeod, that's not what you argued before. And I'm very, very confused now. I mean, it seems as though the moment of the threat doctrine exists and as everybody has understood it, is about evidence, essentially. What can you look at to prove the alleged Fourth Amendment excessive force claim? Can you look at anything that occurred outside of the moment of the threat, anything that occurred previously? You seem to be now suggesting that it is about liability. You said that they are creating a new breed of constitutional tort, and this is about whether or not the police officer can be held liable for his own negligence in the time preceding. I haven't seen that concept anywhere. That was the argument that was made below. Issue number one in Petitioner's Fifth Circuit brief was that Sergeant Felix escalated the danger and was negligent in jumping onto the car. And that is the issue that actually divides the circuits. The Fifth Circuit has never adopted a rule that you can't ever look to anything that happened prior to the use of the force. And the best example I can give... Isn't it true that in your bio, you stated the Fifth Circuit's approach involves reviewing only the events immediately prior to the use of deadly force as opposed to other prior conduct? The other prior conduct that was being referred to there is conduct that is alleged to have created the danger. That might be what you're saying is referred to now. But the sentence suggests that the dividing line is between looking only at the events immediately prior to the use of deadly force as opposed to other prior conduct. No, Your Honor, and on page 33 of the bio, we said there was no circuit split on the issue. We said that every court considers prior events. So whatever you said or you didn't say, Mr. McCloud, it's pretty clear that if you look at the court below, the court below said we're only looking at the prior two seconds and we're not going to look at anything before that. And so, again, even if there's some kind of intra-circuit confusion going on in the Fifth Circuit, there might be. It wouldn't be surprising if on an issue like this there were some. But we have two opinions below, actually, both the circuit court and the district court, who expressed a desire to look beyond two seconds but said we can only look at the prior two seconds. And you seem to be saying, well, that is wrong. I mean, you can look back beyond the prior two seconds. So that suggests to me that there's an easy way of just, you know, vacating and remanding and giving it back to the courts below to address, okay, once we look behind beyond the two seconds and we have a fuller scope of evidence, then we'll make our reasonableness inquiry, hopefully without our putting a thumb on the scales either way. So I have a couple of responses on that. First, I don't think that that's the best reading of the panel decision. I understand that that's what Judge Higginbotham asserted in his solo concurrence, but that is not the law, and he doesn't get to make the law for the Fifth Circuit by just asserting things in his solo opinion. Okay. Fair enough. I understand you read the opinion differently than Justice Kagan does or maybe just as Judge Higginbotham did, but what's wrong with proceeding on that understanding? Well, I think there are a number of things wrong. The first thing I would say is to the extent you are concerned about the breadth of the statements in the panel decision, I think that a better course of action is to affirm the judgment, which is clearly correct. If the only thing we're concerned with is this two-second rule, whether it's there or not, Mr. McCloud, and we just clarify that is not the law, send it back. Any objections to that? Yes, because then you would be sending it back for a remand that is going to be pointless. As I said before, the argument that Petitioner wants to make on remand. Mr. McCloud, the number of remands from this Court that lawyers tell us are pointless could fill volumes. Any other objection besides your view that it would be pointless? Yes. My other objection is it would be creating, I think, a dangerous precedent because it could be seen as endorsing the sort of officer-created danger argument that Petitioner wants to make. And as Justice Barrett alluded to in some of her questioning earlier, Fine. Mr. McCloud, that's a fair concern. But we've also talked about putting that aside and bracketing that and making clear, as we did in Mendez. Mendez. That footnote in Mendez reserved the question. We'd reserve it again, possibly. Possibly. If we do that, any other objections? So I guess if I could ask, if you do that, to do one additional thing, which is to make clear that the standard would have to be high and mere negligence alone would not be enough to satisfy this officer-created system. Negligence involves mens rea, and that's subjective. And we've said in the Fourth Amendment it's an objective test. So up until then you had me, but now I'm afraid I'm getting off the train. Well, I think the problem is I completely agree that negligence is not a relevant consideration, and that's why we object to that test. But that is the test that courts of appeals are applying in the country right now. I don't think there's any question about- Do you want a negligence test or do you not want a negligence test? I do not want a negligence test. Okay, all right. I want a test that says you only look at conduct that actually is regulated by the Fourth Amendment, that searches and seizures. Yes, and it's an objective inquiry looking at the totality of the circumstances, right? It is an objective inquiry that looks at the totality of circumstances to determine whether the officer genuinely believed there was a threat. You do not look at the totality to determine, well, did the officer make a mistake? No, whether he genuinely believes or whether there was an excessive use of force. I thought the latter was the question. And this court has consistently said that when an officer confronts a genuine threat, it is not excessive to use force, and I would be very concerned about- That's an objective inquiry, though, isn't it? That is an objective inquiry, yes, sir. All right, thank you. How broad is the totality of circumstances under your view? Do you get to put in this is the training record of the officer and looking at D minuses in all the excessive force parts of it? Is that part of the totality as you view it? No, Your Honor. We don't view that as relevant. I think Wren says that very clearly. Those sorts of policies and procedures do not inform the reasonableness question that is being asked by the Fourth Amendment. And Justice Alito's questioning alluded to this before. The Fourth Amendment is not a regulation on the reasonableness in a general sense of everything that officers do. It is a regulation of very specific conduct, searches and seizures. And this court has established clear guidelines for determining when searches and seizures are reasonable. The problem with the other side's position is they want you to take literally anything that an officer does and say, if a jury through the lens of hindsight could say that was a bad call or if an expert could come in and say, I wouldn't have done that if I were in the officer's shoes, that could be the basis for a Fourth Amendment claim. So it could be that when this goes down below, the Fifth Circuit will actually address that question, but it didn't. It repeatedly said we can't look at any event ever. You concede in your own brief that there could be situations in which an officer is the aggressor. Page 34, I think, is the page of your brief. You admit that an officer could be an aggressor and act unlawfully in doing so, correct? Yes. But your articulation of this rule is just trying to get us to draw lines that haven't even been addressed by the court below. I think they have been, Your Honor, respectfully. No, respectfully, Mr. McCloud, the court repeatedly said we can only look at the actions in the two minutes before the moment of threat. If your answer had been, if he had walked up in an unmarked car in plain clothes with a gun drawn, and he walked up to the car and this person took off or accelerated slightly and he jumped on and shot blindly, do you think that's reasonable? I think that would not be reasonable for a number of reasons. We've given the game away because at that point you have to look at what the officer did. And, Your Honor, we agree that you can look at what the officer did, and the Fifth Circuit does look at what the officer did. It didn't in this case. In this case, that's because the only argument that Petitioner made below, the only action she said you should look at, was an action based on officer's behavior. And we have three judges who said we shouldn't be limited in this way in the mine run of cases, and so we're stuck with this. We think the judgment is right, but it wasn't addressed at all. Officer-created danger wasn't addressed, and the other side says clearly it's not raising it here. It is going to raise it on remand. And you want an anticipatory ruling from us. No, Your Honor, I think it was addressed, and the best evidence I can give you of that are the cases that the Fifth Circuit itself cited for the proposition that we don't look at the action of the officer. All of those are cases in which the argument that was being made was the argument that they made below that the officer created a dangerous situation, and that was the basis for liability. So that is the argument that the Fifth Circuit said it's not considering, and that's what Judge Higginbotham said he wanted to consider. Mr. McLeod, did the plaintiff argue that the court should be looking at the totality of the circumstances? Yes. And did you object to that as being the test that the court should apply when it decided what it was going to look at to make this determination? No, our objection was that you should not be adopting this officer-created danger theory and considering whether Sergeant Felix escalated the situation. So you did not say the moment of the threat doctrine is the test in the Fifth Circuit, and that's only what you should be looking at. You should not be looking at circumstances and facts and things that happened before the moment of the threat. If I look at the record, I'll find that you're arguing that. So in the Fifth Circuit briefing, I don't believe we did because the labeled moment of the threat doctrine didn't come up until Judge Higginbotham's opinion in this case. That was not a label that had been recognized prior to that. If you look in Westlaw for moment of the threat doctrine, I think there are four hits for that, and this is the one that really originated that term. So that was not our argument below. Our argument below was whether Sergeant Felix escalated the danger was irrelevant, and that's consistent with Fifth Circuit precedent. That's what Judge Higginbotham— All right, but do you concede that that's not what the Fifth Circuit held in this case, that it was irrelevant whether or not he accelerated the danger or he contributed to it? That's not their holding in this case, is it? I believe that is their holding, and that is what Judge Higginbotham objected to. So if you look at page 15A of the petition appendix, Judge Higginbotham says, I would come out differently because I believe we should consider the fact that Sergeant Felix escalated the danger of this situation. That was the argument that they made that he wanted them to consider, and that is the whole basis for the disagreement between us and the Court of Appeals and the disagreement that actually divides the circuit courts on this question. Counsel, can I read you three sentences from this opinion? Certainly. This is the majority. We may only ask whether Officer Felix was in danger at the moment of the threat that caused him to use deadly force against Orrins. It said its inquiry was, quote, confined to whether the officers or other persons were in danger at the moment of the threat resulted in the officer's use of deadly force. And it stated, any of the officers' actions leading up to the shootings are not relevant for the purposes of an excessive force inquiry in this circuit. So Higginbotham did not make up the moment of the threat doctrine. It's been used. It's been cited repeatedly by other circuits. It's well known by that name. This is not a made-up theory. Well, Your Honor, Now, let me finish. If you can see it in page 34, that if the officer was the aggressor, then there are circumstances. You don't think this is one of them. But there are circumstances in which the officer's actions are relevant, correct? We agree that the officer's actions are relevant, and the Fifth Circuit considers officer actions. Cole v. Carson is an ombud decision. They said the officer's actions leading up to the shootings are not relevant. That, I can't, I don't see how I can read that any other way. Again, they say they're not relevant in this case. They said they're never relevant. And, Your Honor, I think you have to read the opinion that's being cited there. That's Harris v. Serpis, and that is a case that says we apply totality of the circumstances, and then when it makes the statement that we don't consider the officer's actions, it's referring to... Totality of the circumstances were not used by this court, correct? In this opinion. It was. They considered the totality of the circumstances. What they did not consider was Petitioner's argument that Sergeant Felix created... The point needs to be placed in the opinion where it used the words totality of the circumstances. I cannot, but that was the argument that was made below. Can you explain Judge Higginbotham's concurrent sentence, I write separately to express my concern with this circuit's moment of the threat doctrine as it counters the Supreme Court's instruction to look to the totality of the circumstances when assessing the reasonableness of an officer's use of deadly force. Yes, he is wrong about that, and the best evidence I can give you of that is Cole v. Carson. I'm asking because he believed that there was such a thing as the moment of threat doctrine and that it was in opposition to the totality of the circumstances test, which is what he was hoping that the court would be able to apply. I don't know how he could reasonably believe that, given that he wrote Cole v. Carson, which is an en banc decision of the Fifth Circuit that is all about pre-shooting facts. In that case... But, I mean, he did believe it, and that belief produced the decision below. Well, I don't think that you should attribute his statements in a solo concurrence that others didn't join to the other members of the panel. I think you should read the cases that they cited. And he was telling you exactly why he wrote the majority opinion the way he did, because he felt constrained to. And I understand that you think he was not so constrained, but we're supposed to be reviewing this decision, and he was telling us, I, the majority opinion writer, felt that I was constrained to do nothing more than look at the prior two sentences. And you don't say that that's the right rule, so it seems as though we should kick it back and let you guys fight it out as to the relevance of anything that happened beyond the prior two seconds. So I guess I would encourage the court, if it does end up remaining, to say a little more than simply do it again, Fifth Circuit. I think it is important to say something about this issue of officer-created danger, because it has divided the circuits for a number of years, and the court has gotten a number of cases that present that issue. Mendez is one. The Bond v. City of Telequa case from a few terms ago that was summarily reversed was another. And so it is lurking in the background of many of these excessive force cases, and it is doing real harm in the circuits that apply that, the Ninth Circuit, the Tenth Circuit. That is the reason we have amici from California that say, this standard makes it impossible for us to train officers and give them clear guidance. So I think it is incumbent on the court to offer a little more clarity on that in an opinion, even if it does remain. And you want to just make sure I have it. What clarity would you want us to give? So if the court is going to offer or accept some version of officer-created danger, perhaps along the lines that Your Honor's Biegert opinion suggested, I think you would want to make clear that something like negligence alone is not going to be enough. It is going to be an extraordinary case in which an officer's creation of the danger is the basis for a Fourth Amendment claim. Thank you, counsel. Justice Thomas? As I understand you, you're saying that it isn't so much that the difference between whether to use the totality of circumstances, but rather what evidence would be available or could be used in that analysis. And here you say the officer-created danger should, that the Fifth Circuit said it could not, it would not permit that assessment. That's correct. Within the context of totality of circumstances. Exactly. So it's a subcategory of the totality of circumstances, I hear you. It is a particular argument that is off limits in the Fifth Circuit and in the majority of the circuits when you're considering the totality of circumstances. So you can still look to things that the officer did prior to using force, but you cannot blame the officer for creating a bad situation and second-guess all of the decisions he made. Justice Lee? Justice Sotomayor? If I go back, you do believe there are situations, you admitted it to me earlier, where an officer's actions can be considered to have created a danger unreasonably. I don't agree with that framing. I agree that you can consider an officer's actions and I agree that an officer's actions can make the use of force less reasonable. Again, the Cole v. Carson example is one that's instructive on that. That is a case where the majority of the Fifth Circuit en banc said things that the officers did prior to using force made it unreasonable for them to use force at a later point. But what they did not do is say, well, did they violate policies or could I have made a better decision? And that is the fundamental difference between my approach and petitioner's approach. Justice Kagan? So the question presented that we took certiorari on is whether courts should apply the moment-of-the-threat doctrine when evaluating an excessive force claim. So to me, what that means is moment-of-the-threat doctrine, do you just look at the second or two before or do you widen your scope to look at other things beyond that? What we did not take cert on is the question that you're raising, a very important question, probably one on which there is some confusion, wouldn't be a surprise to me, but definitely not the question in this case, the question of what weight to give the fact that or the possibility that the officer created the danger in the reasonableness inquiry. That's a completely different question, which we didn't take cert on, which it does not seem to me we're well-positioned in this case to discuss. So if I can just respectfully push back on that, I think in order to answer the question presented as petitioner framed it, you have to understand what the moment-of-threat doctrine is. And for all of the reasons we explained in our brief, it is absolutely not a doctrine that says prior events are off-limits. There is no court in the country that is applying that version of the standard. The dispute between the courts and what divides us in this case is whether when looking at those prior events, you can identify something the officers did was unreasonable in a sort of general cosmic sense and say that contributed to the danger, and even though that is not itself a violation of the Fourth Amendment, it is the basis for your Fourth Amendment excessive force claim. That's the nub of the issue. Thank you. Justice Gorsuch? Justice Kavanaugh? Justice Jackson? Thank you.  Ms. Petit? Thank you, Mr. Chief Justice, and may it please the Court. In the last 15 years, this Court has rejected at least three times that an officer's otherwise life of conduct violates the Fourth Amendment because an earlier split-second decision made a confrontation more likely. Properly understood, what Judge Higginbotham dubbed the moment of threat doctrine merely applies that rule. As this Court recognized in cases like Mendez and Sheehan, it is necessary because the Fourth Amendment must be applied by thousands of real cops in the real world without, in the words of Kentucky v. King, an unacceptable degree of unpredictability. The moment the officer created risk theory, which petitioners have continuously pressed at least until their reply briefed in this Court, is antithetical to that proposition because it invites an open-ended, subjective inquiry into the officer's intent that cannot be conducted without the benefit of hindsight. It also, as Mendez recognized, involves tricky questions and fuzzy standards of causation that cannot be easily applied. Because the Fifth Circuit has properly rejected that proposition, its judgment should be affirmed, and I welcome the Court's question. Would you articulate for us what you think the District Court and the Court of Appeals held? I think that the District Court held, and I would point your honor to Pet at page 17A and 24A, footnote 2, under the Fifth Circuit precedent that prior actions that created a risk were not relevant under the Fifth Circuit's test because that is the argument that petitioner was pursuing at that time. And to Justice Sotomayor's questions earlier, the statements that she is referring to have to be read in light of those arguments because that is what the Fifth Circuit was rejecting when it said the prior actions were irrelevant. I'm sorry, you're saying the statements that the Fifth Circuit made in its opinion regarding what its holding was have to be read in light of the arguments that were before it? I believe that's what they were referring to when they say these actions that you're talking to are irrelevant. What is Judge Higginbotham saying when he says in his concurrence, I write separately to express my concern with the Circuit's moment of the threat doctrine and then he doesn't define it in the way that you have. He says this doctrine counters the Supreme Court's instructions to look at the totality of the circumstances. Your Honor, I would point you to page 15A of his opinion where he also says that in our reasonableness analysis, references to our supposed obligation to consider the totality of circumstances are merely performative. So the dispute here appears to be not the formulation of the rule as I articulated it, but its application. No, he says it's performative. You didn't read the first part of the sentence. If the moment of the threat is the sole determinative factor in our reasonableness analysis. So he says we have a moment of the threat doctrine that tells us we only look at this moment and what that does is it makes any references to totality merely performative because we're not looking at the totality. We're just looking at the moment of the threat. So do you dispute that at least he conceptualized the doctrine in the way that I'm describing and the way that petitioners have put it forward? There are certainly statements to that effect. He has, however, created a very similar concurrence in a case called Mason against Lafayette City. No, I'm talking about this case. So let me tell you what I think is happening and I just want to get your reaction and then I'll be done. It seems as though the question presented here is asking us to decide which test the courts should apply and it sees the moment of the threat doctrine as different, distinct from the totality of the circumstances. Which test? Fifth Circuit applied moment as a threat. Is that right or wrong? It seems now that you are arguing which circumstances, assuming totality, is it okay to include or consider the circumstance of the officer's own conduct? You know, if courts are doing that, is that a problem? That is a separate question that is not, I think, properly within the scope of the question presented which just asks us which test. So can you help me to understand why we would get into whether or not the particular circumstance you've identified is one that courts should be looking at or not? Because I agree with my colleague that it is difficult to answer the question presented without getting into that. And I would point this court to pages 15, 23, 28, 32, and 41 to 42 of the petitioner's opening brief in which they're discussing precisely this type of question. So while they claim to disclaim it, they actually are talking about creation of the risk. In fact, in responding to questions from Justice Alito and Justice Thomas to articulate their test, I heard them say at least twice that they're asking why was he jumping up on the car. I also heard from the United States multiple times manufacturing the risk. That is conflating the two questions because they are quite related. In fact, that is the source of the dispute amongst the circuit courts. The Ninth and the Tenth Circuits say intentional and deliberate conduct creating the risk can obviate the officer's ability to defend himself. The Fifth Circuit says that's not the rule. That's the nature of the dispute. And so trying to take it out of that context and say, just are you considering two seconds or are you considering 30, gets them to the point where there's not a circuit split, as my colleague mentioned. The Fifth Circuit is looking at those issues. In fact, I would point this court to Singleton against Casanova in which Judge Higginbotham joined an opinion six months after this one in which, like Colby Carson, which he wrote three years earlier, the Fifth Circuit was describing all pre-forced conduct. So the Fifth Circuit is not applying the moment of the threat drafting, notwithstanding some of the comments in Judge Higginbotham's opinion. And this court ultimately reviews judgments, not statements and opinions. Counsel, I appreciate that what happened below may be different than what's happening here. At least that's your view. But we did take a question presented about the moment of threat doctrine. I understand you think it's not a thing. But what's wrong with resolving just the question presented and putting aside your record-based concerns? It is a question. We've granted cert on it. I think everybody agrees it's wrong. What's the harm of saying that? As long as, Your Honor, it's very clear that you are not endorsing the creation of the risk theory adopted by the Ninth and Tenth Circuit, then I don't think there's anything necessarily wrong. I agree with my colleague that it is unnecessary. And the reason I say that is I point the court to page 5A of the PET app, which the Fifth Circuit quoted at length a district court opinion that looked at those earlier circumstances. So I don't think it's necessary. But as long as the court is clear that we are not adopting the creation of the risk theory, we have no quarrel with such an action. Going to the nature of the questions here for just a minute, I would point out that the inquiry here... I've heard a lot of concerns about line drawing. And I find that interesting because the petitioner's argument here was that they just wanted to consider the jump as well as the shoot. That itself is a line drawing question and very deliberate because they have actually litigated whether everything up until the jump was reasonable and the district court concluded that it was. Because again, courts below are not considering just the two seconds. Instead, they are considering the totality of the circumstances. And to the question from the United States about the subjective nature of the test, this goes again to the arguments that had been raised up until the reply brief, which was after our argument, or our brief, in which the petitioner was endorsing the view of the Ninth and Tenth Circuit, which this court in Mendez expressly acknowledged was subjective and therefore inconsistent with the Fourth Amendment, which again is why we think this court, if it is going to remand, which again is unnecessary, makes it very clear that it is not adopting that view because it would be a fundamental shift in the Fourth Amendment, and it also is a shift that going to Justice Kavanaugh's questions earlier would create an impossibility for law enforcement agencies to train their officers for the reasons described in the California Sheriff's Association's brief. If there are no further questions, I request that you affirm. Thank you, Counsel. Justice Thomas? Justice Odomenor? Kagan? Gorsuch? Kavanaugh? Justice Barrett? Justice Jackson? Thank you, Counsel. Rebuttal, Mr. Zielinski? I have five very brief points. First, Justice Jackson, you asked my friend on the other side when they argued for the test that was applied below. Listen to minutes 28 and 29 of oral argument. Then you'll hear that there. Justice Sotomayor, you noted that my friends on the other side agree in many cases, the jump in front of car case, you need to look at the whole picture of what the officer did, the jump and the shoot. It is, there is no rule that they can't distinguish that case from this case. Third, Justice Kavanaugh, you had some practical questions about how this is going to impact effective policing. Officers receive qualified immunity. As the Cato brief discusses, 99 plus percent of the time, they are also indemnified by the municipality. You have a brief of 22 former high-ranking police chiefs who are in front of you saying that you should rule for petitioner and it will not hamper but promote good policing. And then third, the DHS rule is a great example of why this is not going to harm effective policing. Fourth, Justice Alito, I want to be very clear. We are not saying that every single mistake is going to result in liability, what we are saying is you have to look at the whole picture and here that's more than just two seconds. Finally, Justice Gorsuch, we agree wholeheartedly this rule is inconsistent with the common law. If you rule and adopt the moment of the threat doctrine, you will essentially enact a hereto unprecedented rule permitting the killing of fleeing misdemeanors. You should not do that. You should vacate and remand. Thank you. Thank you, counsel. The case is submitted.